UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAUREN LEBLANC,

                Plaintiff,

v.                                       1:22-cv-229
                                            (ECC/PJE)
ANGIODYNAMICS, INC., CHAD CAMPBELL,
STEPHANIE PITTS, and CHRIS DAVIS,

                Defendants.
_____

APPEARANCES:

Megan Goddard, Esq., *for Plaintiff*
Michael D. Billok, Esq., *for Defendants*

**Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM-DECISION & ORDER**

      On January 31, 2022, Plaintiff Lauren LeBlanc filed a complaint in the Supreme Court of the State of New York, County of Albany against Defendants AngioDynamics, Inc., Chad Campbell (Campbell), Stephanie Pitts (Pitts), and Chris Davis (Davis) alleging violations of the New York State Human Rights Law, the Equal Pay Act of 1963 (the federal EPA), and the New York Equal Pay Act (the New York EPA). Dkt. No. 1-1 at 2. Defendants removed the action on March 9, 2022. Dkt. No. 1. Presently before the Court is Defendants' motion for summary judgment. Dkt. No. 40. The motion is fully briefed. Dkt. Nos. 45, 46. For the following reasons, Defendants' motion for summary judgment is granted on the federal and New York EPA claims, and the remaining state-law claims are remanded to state court.

I.  **Background**[1]

Defendant AngioDynamics, Inc. (AngioDynamics) provides medical devices to treat "cancer and peripheral vascular diseases." Def. SUMF ¶ 1. Plaintiff began working for AngioDynamics in March 2013 as an Exhibits and Events Manager, and in December 2014, she became a Senior Executive Administrative Assistant to the Chief Executive Officer with an annual salary of $85,000. *Id.* ¶¶ 2, 4, 9. In June 2017, she became an Associate Product Manager (APM) on the Vascular Access Marketing Team (VA Team) with an annual salary of $90,176.84.[2] *Id.* ¶¶ 8-9.

During Plaintiff's employment, she and the other PMs on her team reported to managers at levels higher than PM. Def. Resp. ¶ 1. According to Plaintiff, APMs "typically report[ed] to and support[ed] a [PM], who manage[d] product lines or launches" and "assign[ed] work supporting their products and their market strategy to the APM." Pl. SUMF ¶ 1.

Another female APM on Plaintiff's team was promoted in August of 2018. Dkt. No. 40-39 ¶ 20. After the other APM's promotion, Plaintiff's salary of $95,900 was still higher than that new PM's salary of $95,000. *Id.* ¶¶ 19, 21. While Plaintiff worked as an APM, three other female APMs were on her team at various times. Pl. SUMF ¶¶ 3; Dkt. Nos. 40-39 ¶ 10; 40-44 at 2.

Plaintiff initially reported directly to Brad Chartrand, Global Director of Marketing for Vascular Access. Def. SUMF ¶¶ 7, 16. According to Plaintiff, Chartrand told her that she would

---

[1] The facts are drawn from the Defendant's Statement of Material Facts (Def. SUMF), Dkt. No. 40-51, Plaintiff's Statement of Additional Material Facts (Pl. SUMF), Dkt. No. 45-2, Plaintiff's Response to Defendant's Statement of Material Facts (Pl. Resp. SUMF), Dkt. No. 45-1, and Defendant's Response to Plaintiff's Statement of Additional Material Facts (Def. Resp. SUMF), Dt. No. 46-1, and the exhibits that the parties have submitted, to the extent that they are admissible evidence. Disputed facts are noted.

[2] At the time, Defendant Campbell was Senior Vice President and General Manager of Vascular Access, and Defendant Pitts was Clinical Marketing Manager for the VA Team. Def. SUMF ¶ 7.

likely be promoted to Product Manager in approximately six months because of her previous experience at the company. *Id.* ¶ 15; Pl. SUMF ¶ 4. Plaintiff was assigned products related to dialysis in the United States, and she managed these products without the management and guidance of a PM. Pl. SUMF ¶ 8. Approximately three months later, Plaintiff began handling accessories, and she managed that "on her own, without a PM to guide her." *Id.* ¶ 9. In September 2017, Plaintiff received the global dialysis market. *Id.* ¶ 10. In addition, according to Plaintiff, within the first few months in her new role, Chartrand assigned her "PM responsibilities such as managing [her]own product lines" and she "was expected to determine her own marketing strategy." *Id.* ¶ 7 (citing Declaration of Lauren LeBlanc (LeBlanc Decl.) ¶ 8, Dkt. No. 45-3).

In November 2017, Chartrand left AngioDynamics, and Plaintiff began reporting directly to Defendant Campbell. Def. SUMF ¶¶ 16-17. In November 2017, Plaintiff acquired the ports products on a temporary basis, and she continued to handle those products until she was terminated. Pl. SUMF ¶¶ 10-11. By November 2017, Plaintiff was managing 65 of the 98 products in the VA portfolio, and that was more than either of the other two APMs. *Id.* ¶ 12. According to Defendant, Plaintiff's products generated approximately $40 million in annual global revenue and that was consistent with the other APMs. Def. Resp. SUMF ¶ 12.

In May 2018, AngioDynamics hired Defendant Davis to replace Chartrand, and Plaintiff began reporting to him. Def. SUMF ¶ 18. On August 8, 2018, Campbell completed a formal performance evaluation stating that Plaintiff "exceeds expectations" or "meets expectations" in all categories except one, "collaboration," where the rating was "needs development." Pl. Resp. SUMF ¶ 21; Dkt. No. 40-19. Plaintiff's overall score was 3.17, indicating "solid performer." *Id;* Dkt. No. 40-17. The parties dispute whether Plaintiff reported that she was experiencing harassment and discrimination from Campbell, Pitts, Davis and others in May and September of

2018.  *Compare* Pl. SUMF ¶¶ 26, 28 *with* Def. Resp. SUMF ¶¶ 26, 28.  The parties also dispute the quality of Plaintiff's performance from May through October 2018.  *Compare* Def. SUMF ¶¶ 21-26 *with* Pl. SUMF ¶¶ 17-19.

On October 30, 2018, Plaintiff met with Davis and human resources representative Katie Garippa (Garippa) to discuss her performance, and, at the end of this meeting, Plaintiff told them that she was pregnant.  *Compare* Pl. SUMF ¶¶ 23-24 *with* Def. SUMF ¶¶ 89, 92.  After this meeting, Davis, Campbell, and Garippa discussed how to address Plaintiff's performance, and Campbell proposed "delivering [Plaintiff] an option for leaving AngioDynamics."  Def. SUMF ¶¶ 94-99; Dkt. No. 40-22 at 2-3.  On November 5, 2018, Garippa wrote, "Overall, I strongly advise against separation."  Dkt. No. 40-22 at 2.  Davis continued to coach Plaintiff and did not put her on a performance improvement plan (PIP).  Def. SUMF ¶ 100.  Plaintiff and Defendant disagree about Plaintiff's performance during November 2018.  *Id.* ¶¶ 100-09; Pl. Resp. SUMF ¶¶ 100-09.

On December 6, 2018, Plaintiff began a PIP.  Def. SUMF ¶ 111.  On December 9, 2018, Plaintiff emailed Garippa regarding a separation package and attached a document with an EEOC Case Number.  Pl. Resp. SUMF ¶ 114; Dkt No. 40-48; Def. SUMF ¶ 115.  The parties did not agree on a separation package.  Pl. Resp. SUMF ¶ 117.  On approximately December 13, 2018, Defendants began an investigation regarding Plaintiff's allegations of discrimination in the document with the EEOC Case Number.  Def. SUMF ¶¶ 118-21.  The investigation concluded that none of Plaintiff's allegations of discrimination, harassment, and retaliation were substantiated.  *Id.* ¶ 121.

Plaintiff completed the PIP successfully on January 28, 2019.  Def. SUMF ¶¶ 111, 126-27.  The parties disagree about whether Plaintiff had performance issues after she completed the PIP.  *Compare* Def. SUMF ¶¶ 129-34 *with* Pl. Resp. SUMF ¶¶ 129-34.

On February 1, 2019, Plaintiff filed a discrimination charge with the New York State Department of Human Rights, and on February 14, 2019, she notified AngioDynamics about the charge. Pl. SUMF ¶ 50. On the same day, Plaintiff presented a plan for several new products. *Id.* ¶ 51. The next day, AngioDynamics terminated Plaintiff's employment. *Id.* ¶ 52. After Plaintiff left the company, AngioDynamics hired Eric Del Vescovo as an APM. Dkt. No. 40-44 at 2.

According to Plaintiff, she "perform[ed] the work of two PMs," and she "was not paid as much as male PMs . . . ." LeBlanc Decl. ¶ 71. During Plaintiff's employment, she was the highest paid APM at AngioDynamics. Def. SUMF ¶ 154; Pl. Resp. SUMF ¶ 154. Plaintiff did not offer any evidence identifying any specific male PM to use as a comparator, providing salaries paid to specific male PMs, or providing the salary range for male PMs during the relevant time period.

## II.   Legal Standard

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the

nonmoving party has "'failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).  If the moving party meets this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  In ruling on a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. NW Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003) (citing *Anderson*, 477 U.S. at 255).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

### III.   Discussion

#### A.   Equal Pay Act

Plaintiff alleges that Defendants violated the federal EPA.  Defendants argue that Plaintiff was the "highest paid APM in the company."  Dkt. No. 40-50 at 14.  Plaintiff responds that her comparators should be PMs at AngioDynamics, not just those working on her team, and that she "was not paid equally with men in product management roles who performed substantially equal jobs with that which Plaintiff performed."  Dkt. No. 45 at 15.  Defendant replies that Plaintiff made more than any APM or PM on her team, and that "unidentified PMs" in other departments "are not proper comparators" because "they held different titles, were not in the same department, had different supervisors, and performed different functions.  Dkt. No. 46 at 14.  In addition, Defendant argues, "[b]ecause Plaintiff fails to identify even one comparator, it's not possible to differentiate their experience, skills or budgets . . . ."  *Id.* at 15.

"To establish a claim under the [Equal Pay Act], a plaintiff must demonstrate that 'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions."  *Edelman v. NYU Langone Health Sys.*, 141 F. 4th 28, 41 (2d Cir. 2025) (quoting *Eisenhauer v. Culinary Inst. Am.,* 84 F. 4th 507, 523 (2d Cir. 2023) (citation and quotation marks omitted)).  "The Second Circuit has made clear that the EPA applies only to 'equal work.'"  *Fahrenkrug v. Verizon Servs. Corp.*, No. 11-cv-1014, 2015 WL 13021890, at *22 (N.D.N.Y. May 14, 2015) (quoting *EEOC v Port Auth.*, 768 F.3d 247, 254 (2d Cir. 2014)).  "While the equal work inquiry does not demand evidence that a plaintiff's job is 'identical' to a higher-paid position, the standard is nonetheless demanding, requiring evidence that the jobs compared are 'substantially equal.'"  *Port Auth.*, 768 F. 3d at 255 (citing *Lavin–McEleney v. Marist Coll.,*

7

239 F.3d 476, 480 (2d Cir. 2001)); *see also* 29 C.F.R. § 1620.13(e) ("Application of the equal pay standard is not dependent on job classifications or titles but depends on actual job requirements and performance."). "To satisfy this standard, a plaintiff must establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Port Auth.*, 768 F. 3d at 255. "'[B]road generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice' to show that the work in question was equal." *Fahrenkrug*, 2015 WL 13021890, at *22 (quoting *Port Auth.,* 768 F.3d at 256). "Further, the [*Port Authority*] court rejected comparisons between employees who had different amounts of experience." *Fahrenkrug*, 2015 WL 13021890, at *22.

"Some courts have held that in order to make this showing, 'the plaintiff must identify a particular 'comparator' for a 'factor by factor' comparison and may not compare himself/herself to a hypothetical or 'composite' member of the opposite sex.'" *Fraser v. MTA Long Island Rail Rd.*, 295 F. Supp. 3d 230, 253 (E.D.N.Y. 2018) (quoting *Santiago v. United States*, 107 Fed. Cl. 154, 158 (2012) (citing *Strag v. Bd. of Trs.*, 55 F.3d 943, 948 (4th Cir. 1995) and *Moorehead v. United States,* 88 Fed. Cl. 614, 619 (2009)). The Second Circuit has "expressed[ed] no opinion the merits of such a rule. . . ." *Lavin-McEleney,* 239 F.3d 476 at 480; *see also Port Auth.,* 768 F.3d at 256 (explaining that in *Lavin-McEleney*, the Second Circuit "affirmed a judgment in favor of a professor-plaintiff . . . despite the fact that the chosen comparator and other statistical evidence compared salaries across departments—because the plaintiff offered 'substantial evidence' that the comparisons 'isolate[d] comparable positions [to] accurately capture [ ] equality of skill, effort, and responsibility.'") (quoting *Lavin-McEleney,* 239 F.3d at 481). Nevertheless, "[t]o plead prohibited discrimination, plaintiffs typically identify a comparator, or a higher-paid colleague of the opposite gender." *Moazzaz v. MetLife, Inc.*, No. 19-CV-10531, 2021 WL 827648, at *4

(S.D.N.Y. Mar. 4, 2021) (citing *Lavin-McEleney,* 239 F.3d at 480). In sum, "a successful EPA claim depends on the comparison of actual job content; broad generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." *Port Auth.,* 768 F.3d at 256.

Here, Plaintiff has not offered sufficient evidence for a reasonable jury to find that AngioDynamics paid higher wages to male employees who were performing equal work. The parties agree that Plaintiff was the highest paid APM at AngioDynamics during her employment. Def. SUMF ¶ 154; Pl. Resp. SUMF ¶ 154. As a result, there is no evidence that male APMs were paid more than her, and there is no comparator at that level.

Plaintiff's attempt to compare herself to a generic PM also fail. Even viewing the evidence in the light most favorable to Plaintiff, she has not offered sufficient evidence for a reasonable jury to find that male PMs were paid more than her. The only evidence on this issue that Plaintiff cited in her submissions related to this motion is her declaration that "[w]hile I worked for . . . AngioDynamics, performing the work of two PMs, I was not paid as much as male PMs at. . . AngioDynamics earned." LeBlanc Decl. ¶ 71. Plaintiff offered no supporting evidence for her statement such as the identification of specific male PMs to use as comparators, the amount of salaries paid to specific male PMs, or even the salary range for male PMs at that time. Plaintiff's conclusory statement is not a sufficient basis for a federal EPA claim. *See Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 244 (S.D.N.Y. 2001) (dismissing federal EPA claim for failure to state a claim where the amended complaint "contain[ed] nothing more than bald assertions that [plaintiff] and male employees of Defendant received disparate wages for substantially equal jobs under similar working conditions" and finding that "such allegations are too conclusory to state a claim."); *see also Chiaramonte v. Animal Medical Center*, 677 Fed. Appx. 689, 692 (2d Cir. 2017)

(affirming summary judgment for defendant where plaintiff "failed to identify a male veterinarian that performs substantially equal work," and "the 'statistics' she seeks to offer are 'basically a roll call of [veterinarians] and salaries, with no effort made to explain what each [veterinarian] did'" and explaining that "[t]he *Lavin-McEleney* Court did not suggest than an EPA plaintiff could make out a *prima facie* case of discrimination by virtue of generic evidence of pay disparities between males and females in a given company.").

Finally, Plaintiff has not offered sufficient evidence for a reasonable jury to conclude that that she was performing equal work as a generic PM. Plaintiff asserts that, while reporting to Chartrand, she (1) received assignments that were normally handled by a PM "such as managing [her] own product lines, in addition to program and product launches," (2) "[u]nlike most APMs at . . . AngioDynamics, [she] did not report to or support a PM [and] instead . . . reported to a marketing director," (3) "unlike an APM, [she] was given little to no oversight on [her] assignments and was expected to determine her own marketing strategy." LeBlanc Decl. ¶ 8. The only evidence Plaintiff cites for these assertions—that (1) PMs, not APMs, normally handled their own product lines, (2) APMs at AngioDynamics normally reported to a PM, and (3) APMs normally received oversight on their assignments and were not expected to determine their own marketing strategy—are her own declaration and the job descriptions for APM and PM. Pl. SUMF ¶¶ 1, 7 (citing LeBlanc Decl. ¶¶ 2, 8; Dkt. Nos. 40-42 (APM Job Description); 40-45 (PM Job Description)). She cited no evidence about the education and experience of any specific or generic male PM. She also cited no detailed evidence about the work any specific or generic male PM did other than the PM job description. Even viewing the evidence in the light most favorable to Plaintiff, these bare-bones statements are not the type of "comparison of actual job content" necessary for "a successful EPA claim." *Port Auth.,* 768 F.3d at 256; *see also id.* at 255 ("'job content and not job title or

10

description' is the central concern of an EPA claim") (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1310 (2d Cir. 1995)); *Downes v. JP Morgan Chase & Co.*, No. 03-CV-8991, 2006 WL 785278, at *24 (S.D.N.Y. Mar. 21, 2006) ("a comparison of two employees for the purposes of a[n] [EPA] lawsuit cannot be based solely on their job titles or job descriptions."); *Fahrenkrug*, 2015 WL 13021890, at *22 (granting summary judgment on federal EPA claim where Plaintiff did not produce evidence "specifically identifying" her comparator's "job duties," and she testified that "she did not know [the comparator's] educational or employment background; did not know whether he had more experience that she did with respect to programming routers; and did not know how many years of work experience he had prior to joining Verizon.").

Second, Plaintiff points to the higher volume of products she handled compared to other APMs on her team. But Plaintiff does not cite any legal authority for the proposition that a higher volume of work is a factor in determining the equality of positions. In addition, given that the other APMs on Plaintiff's team were women, Plaintiff earned more than any other APM at AngioDynamics, and Plaintiff earned more than the APM who was promoted to PM, the volume of her work compared to other APMs on her team does not create a genuine dispute of material fact. To the extent that Plaintiff argues that she handled a higher volume of products compared to other PMs on her team, she did not identify any PM on her team, and she earned more than the female APM who was promoted to PM while she was there.

As a result, even viewing the evidence in the light most favorable to Plaintiff, the evidence she cited is not sufficient for a reasonable jury to conclude that she did work equal to a specific or generic PM or that she was paid less "than any employee whose work was equal to her own." *Fahrenkrug*, 2015 WL 13021890, at *22. Defendants' motion for summary judgment as to Plaintiff's federal EPA claim is therefore granted.

### B. Supplemental Jurisdiction

The remaining claims are all claims under New York law including the New York EPA and the NYSHRL.

"A district court may decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction." *Allen v. City of New York,* 2025 WL 3152723 (2d Cir. 2025), at *2 (citing 28 U.S.C. § 1367(c)(3)). Indeed, the district court "may (and indeed ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)). "When deciding whether to exercise jurisdiction over pendent state law claims, courts weigh the factors of 'judicial economy, convenience, fairness, and comity.'" *Allen,* 2025 WL 3152723, at *2 (quoting *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 357 n.7 (1988), *abrogated on other grounds by Wullschleger*, 604 U.S. at 32); *see also Kolari v. New York–Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir. 2006) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Cohill,* 484 U.S. at 357 n.7 (1988)).

Here, the Court finds that judicial economy supports the exercise of supplemental jurisdiction over Plaintiff's claim under the New York EPA. "[F]or purposes of the issues here, the two statutes encompass the same elements."[3] *Edelman*, 141 F. 4th at 41-42 (quoting *Eisenhauer*, 84 F.4th at 524-26). *See Allen,* 2025 WL 3152723, at *2 (concluding "that the district court did not abuse its discretion in exercising supplemental jurisdiction over the NYSHRL and

---

[3] "The New York and federal EPAs vary in the applications of certain affirmative defenses, and the New York EPA prohibits pay discrimination on the basis of membership in other protected classes in addition to sex, but these differences are not relevant here." *Edelman,* 141 F.4th at 42 n.4 (citing *Eisenhauer*, 84 F.4th at 525 (discussing differences between the two statutes in the bona-fide-factor-other-than-sex defense))."

12

NYCHRL disparate impact claims and the NYSHRL disparate treatment claim[] [b]ecause . . . the NYSHRL and NYCHRL standards at issue either mirror or overlap with the standards of their federal counterparts, the district court's adjudication of these state . . . claims involved only well-settled principles of anti-discrimination law and did not raise any substantial comity concerns."). It would therefore be inefficient to remand Plaintiff's New York EPA claim. *Allen v. City of New York,* No. 19-cv-3786, 2024 WL 3965697, at *8 (S.D.N.Y. Aug. 28, 2024) (quoting *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647, 2017 WL 3475494, at *4 (S.D.N.Y. Aug. 11, 2017)).  As a result, Plaintiff's equal pay claim under the New York State EPA is dismissed for the same reason that her federal EPA claim is dismissed.

Regarding Plaintiff's remaining claims under NYSHRL, the Court declines to exercise supplemental jurisdiction.  Discovery is complete, and briefing is complete on Defendants' summary judgment motion, but there are no previous decisions affecting the merits, and the pretrial proceedings that occurred will not be lost if the case is remanded.  In addition, this action was commenced in state court, and it will not be necessary for Plaintiff to bring a new action.  Finally, the interests of comity weigh in favor of remand because the remaining claims concern the application of the NYSHRL.  *See Chiaramonte,* 677 Fed. Appx. at 692 n.2 (concluding that the district court "appropriately declined to exercise supplemental jurisdiction over [plaintiff's] remaining state-law claims" after dismissing plaintiff's federal claims including an Equal Pay Act claim); *see also Sunnen v. New York State Dept. of Health,* 544 Fed. App'x. 15, 17 (2d Cir. 2013) (vacating district court decision to dismiss "state-law claims against a state agency that were removed to District Court pursuant to the Court's pendent removal jurisdiction" and remanding for the district court to remand those claims to state court) (quoting *Naylor v. Case & McGrath, Inc.,* 585 F.2d 557, 562 (2d Cir.1978)); *id.* ("concerns of comity and of federalism . . . encourage

13

remanding to the state courts cases in which state court adjudication can properly claim primacy of interest."); *Sunnen v. New York State Dept. of Health*, No. 12 Civ. 3417, 2012 WL 6645942 at *2-3 (S.D.N.Y. Dec. 21, 2012) (explaining that the state-law claims included NYSHRL claims). For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims, and the case is remanded to state court for further adjudication.

## IV.   Conclusion

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment under Rule 56, Dkt. No. 40, is **GRANTED** as to Plaintiff's Equal Pay Act claim and Plaintiff's New York Equal Pay Act claim; and it is further

**ORDERED** that the remaining claims are remanded to New York State Supreme Court, Albany County; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this action.

**IT IS SO ORDERED.**

Dated:  January 16, 2025

_____
Elizabeth C. Coombe
U.S. District Judge